# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DIAHNTAE BELL,

      Petitioner,

Case No. 3:11-cv-135

  -vs-

District Judge Timothy S. Black
Magistrate Judge Michael R. Merz

WARDEN, Warren Correctional
 Institution,

      Respondent.

## REPORT AND RECOMMENDATIONS

      This habeas corpus case has been reopened on the Court's conclusion that Petitioner's initial filing was timely under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"). The case is now before the Court for initial review under Rule 4 of the Rules Governing § 2254 Cases.

      Petitioner is serving a sentence of twenty-three years to life upon his convictions for felony murder, two counts of burglary, and possessing a weapon while under a disability. The sentence was imposed by the Montgomery County Common Pleas Court in its Case No. 07-cr-182.

      Petitioner pleads the following grounds for relief:

      **Ground One:** Ineffective Trial and Appellate Counsel

      **Supporting Facts:** Trial counsel failed in respects outlined in Petitioner's direct appeal and application for reopening (appellate counsel), but not limited to.

      **Ground Two:** Evidence was insufficient to convict Petitioner.

>    **Supporting Facts:** The evidence presented in the case did not support the verdict. The jury convicted Petitioner based upon information announced in the presence of the jury that the Petitioner had previously been convicted of criminal activity.
>
>    **Ground Three:** Ineffectiveness of Appellate Counsel.
>
>    **Supporting Facts:** Appellate counsel failed to raise meritorious claims that resulted in Petitioner not receiving a constitutional appeal.
>
>    **Ground Four:** Double Jeopardy Violation.
>
>    **Supporting Facts:** Petitioner was convicted twice for the same offense.

(Petition, Doc. No. 1, PageID 16-21.)

## Analysis

### Ground One

In Ground One Bell asserts he received ineffective assistance of trial counsel and ineffective assistance of appellate counsel in the ways outlined in his direct appeal and application for reopening the direct appeal.[1]

The sole claim of ineffective assistance of trial counsel made on direct appeal was that his trial attorney was ineffective for failure to request a jury instruction on voluntary manslaughter as

---

[1] At the end of this section of his pleading, Petitioner writes "including but not limited to." However, he has not pled any other claims of ineffective assistance of counsel anywhere in the Petition and this Court cannot adjudicate claims that have not been actually made. The analysis is therefore limited to the claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel made in the state courts.

a lesser included offense of murder. *State v. Bell*, 2009 Ohio 4783 ¶ 48, 2009 Ohio App. LEXIS 4068 (Ohio App. 2nd Dist. Sept. 11, 2009). The Court of Appeals decided this claim on the merits, holding as follows:

> [*P51] Voluntary manslaughter is a lesser-included offense of murder. *State v. Shane* (1992) 63 Ohio St. 3d 630, 632, 590 N.E.2d 272. Thus, a defendant charged with Murder is entitled to an instruction on Voluntary Manslaughter when the evidence presented at trial would reasonably support both an acquittal on the charged crime of Murder and a conviction for Voluntary Manslaughter.
>
> [*P52] The question in this case is whether trial counsel acted improperly by failing to request a Voluntary Manslaughter instruction. An [sic] claim of ineffective assistance of counsel claim requires a demonstration that trial counsel's performance was deficient, and that the deficient performance prejudiced the defendant. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674*; State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. There exists a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and that a challenged decision might be considered sound trial strategy. *State v. Smith* (1985), 17 Ohio St. 3d 98, 100, 17 Ohio B. 219, 477 N.E.2d 1128. Strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 1995 Ohio 104, 651 N.E.2d 965. A review of the transcript reveals that Bell's defense was based upon the idea that Diamond Washington, rather than Bell, actually shot Bailey. Counsel raised the issue by intimating that Washington was summoned to the apartment complex by his sister, and that he came to the scene with a gun for the sole purpose of confronting Bell. Counsel also tried to bolster this account by portraying the witnesses as presenting inconsistent testimony regarding the shooting as well as by depicting the witnesses as being unable to accurately observe the shooting.
>
> [*P53] While a criminal defendant is entitled to present inconsistent defenses to a jury, the presentation of inconsistent defenses entails obvious obstacles to successfully persuading the jury. We are not prepared to hold that it is ineffective assistance of counsel to follow a trial strategy that eschews an inconsistent defense -- in this case, an argument that Bell did not shoot Bailey, but, if he did, he was in a sudden passion or fit of rage.

*State v. Bell, supra*, ¶¶ 51-53.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton,* 544 U.S. 133, 134 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362 (2000).

Here the Second District Court of Appeals decided Petitioner's claim of ineffective assistance of trial counsel on the merits, applying the appropriate Supreme Court precedent, *Strickland v. Washington, supra*. And the decision was not objectively unreasonable. Defense counsel's strategy was to deny that Mr. Bell did the fatal shooting at all. This would have been very difficult to combine persuasively with a defense which said to the jury, if you don't believe someone else did the shooting, then you should find that Mr. Bell was sufficiently enraged when he did the shooting that it only amounts to voluntary manslaughter. Those two defenses are so inconsistent on the facts that presenting both would likely have led the jury to believe neither. Therefore it was not objectively unreasonable for the Court of Appeals to find no ineffective assistance of trial counsel in not presenting the two defenses.

Bell's claims of ineffective assistance of appellate counsel were raised in his application for reopening under Ohio R. App. P. 26(B). The claims were

> 1. Appellate counsel was ineffective for not asserting ineffective assistance of trial counsel for failure to move to bifurcate the charges so that the weapons under disability charge would be tried to the bench rather than to the jury. The Court of Appeals decided there was no ineffective assistance of appellate counsel in this decision because it would have depended on matter outside the record, to wit, discussions Bell would have had with his trial counsel on the question of

        bifurcation. *State v. Bell*, Case No. CA 022448 at 2-3 (Ohio App. 2nd Dist. Feb. 16, 2010)(unreported)("Bell II").

2. Appellate counsel was ineffective for failure to move to suppress evidence taken from the truck Bell had been driving at the time of the offenses. The Court of Appeals decided this assignment of error would have been without merit because the truck did not belong to Bell and he therefore would have had no standing to complain of its search. *Id.* at 3.

3. Appellate counsel was ineffective for failure to argue that there was insufficient evidence to show that the residence he was charged with burglarizing was a place where a person was present or likely to be present. The Court of Appeals concluded this argument had in fact been raised on direct appeal. *Id.*

4. Appellate counsel was ineffective for not arguing that he did not have access to the gun used for the shooting. The Court of Appeals noted that the record showed he had the keys and entry device when he was arrested, showing he could have retrieved the gun as well. *Id.* at 4.

5. Appellate counsel was ineffective for failure to assert that trial counsel was ineffective for failure to seek a jury instruction on self defense. The Court of Appeals rejected this potential assignment of error on the same ground they had rejected the voluntary manslaughter claim noted above, to wit, that it would have been inconsistent with the defense actually presented. *Id.*

6. Appellate counsel was ineffective for failure to raise arguments on the sufficiency of the indictment and the sufficiency of the evidence. The Court of Appeals found these claims were in fact raised on direct appeal. *Id.*

    As with the claims of ineffective assistance of trial counsel, these claims of ineffective assistance of appellate counsel were disposed of on the merits by the Court of Appeals.[2] On review,

---

[2] In deciding whether to grant reopening of a direct appeal, an Ohio court of appeals considers whether the appellant has made a colorable claim of ineffective assistance of appellate counsel. Deciding this question produces a decision on the merits: if there is no colorable claim,

this Court finds the disposition to be an objectively reasonable application of *Strickland v. Washington, supra*, as it applies to appellate advocacy.

Petitioner's first ground for relief is without merit and should be dismissed with prejudice.

### Ground Two

In his second ground for relief, Mr. Bell asserts his conviction is supported by insufficient evidence. The Court of Appeals summarized the evidence at trial as follows:

> [*P4]  On February 27, 2007, Cassandra Graves and Quiana Lott were residents of an apartment located at 5157 Embassy Place in Harrison Township. On that date, they noticed Bell coming out of an apartment located next door at 5155 Embassy Place. That apartment was being rented by Graves's sister, Donitta Harvey, who was in prison at that time. Graves and her brother Deangelo Epps were watching Harvey's apartment while she was in prison, and they had a key to the apartment. Bell was carrying a DVD player identified as belonging to Harvey. When Bell was confronted by Graves and Lott he claimed that he had permission to enter the apartment. He ultimately relinquished the DVD player and went to another apartment located at 5151 Embassy Place. Graves called the police to report Bell. When the police arrived, Bell had left the scene.
>
> [*P5]  Almost two hours later, Bell returned to the apartment complex where he was observed pacing back and forth behind the apartments. Bell confronted the residents of 5157 and claimed that he had no reason to steal the DVD player. At that time, Lott became nervous, telephoned her brother Diamond Washington, and asked him to come over. At one point, Bell went back to the apartment located at 5151 and told the occupants, Lamicah Helton and Lamond Chambers, that he had left his keys in 5155. Both Helton and Chambers approached the residents of 5157, seeking to gain access to 5155 in order to look for the keys; their requests were refused. Thereafter, Bell again confronted the residents of 5157 and asked

---

*a fortiori* there is no claim with merit.

them to look for his keys. At that point, Larue Bailey, another resident of 5157, had returned to the apartment. He and Washington went over to 5155 to look for the keys, but did not find them.

[*P6] After Washington and Bailey went back inside 5157, Bell attempted to enter 5155 through the kitchen window. He was stopped by Washington and Bailey. Washington and Bell began to "tussle," and a gun was pulled out. As the men fought, Bell was shot in the hand and thereupon dropped the gun. Washington kicked the gun over to Bailey, who was later observed holding the gun at his side, pointed downward. At some point, the fight ended, with Washington returning inside to 5157. Bell was then observed walking back to the truck and retrieving a gun. Thereafter, he was observed shooting Bailey.

[*P7] Following the shooting, Bell ran back and entered Helton's apartment, but immediately exited through the front door. Helton and Chambers took their children and left the apartment complex in a vehicle. The police responded to the scene. Bailey was transported to the hospital, where he was pronounced dead. Approximately fifteen minutes after the shooting, police received information that Bell was inside an apartment located at 5148 Northcutt Place, a short distance from Embassy Place. Bell was apprehended. A few days later, the handgun used to kill Bailey was found in a trash can in Trotwood. No fingerprints were obtained from the gun.

*State v. Bell, supra*, ¶¶ 4-7.

On direct appeal, Bell argued his conviction was against the manifest weight of the evidence.

*Id.* ¶ 26. In deciding this claim, the Court of Appeals wrote:

[*P27] In this assignment of error, Bell contends that the convictions for Burglary and Murder are against the manifest the weight of the evidence. Specifically, he claims that the State failed to link the gun used to kill Larue Bailey to him, and thus failed to prove the elements of Murder and of Having a Weapon Under Disability. He further claims that the record contains varying accounts of the murder, which mandated an acquittal on those charges. Bell also contends that the State failed to prove that he used force, stealth or deception to enter the apartment rented by Harvey. Finally, he claims that the State failed to demonstrate that any person was present, or likely to be present, in the Harvey apartment.

[*P28]   When reviewing a judgment under a manifest weight standard of review "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St. 3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717.

[*P29]  We begin with the claim that the State failed to prove that Bell used force, stealth or deception to gain admittance to Harvey's apartment. We note that the record demonstrates that prior to the time Bell initially entered the apartment, the apartment doors had been closed. Bell was observed coming out of the back door of the apartment, and no one had let him into the apartment and no one was observed with him. This evidence is sufficient to support the inference that Bell opened the door to the apartment in order to gain access thereto. This court has held that the force necessary to open a closed door constitutes force sufficient to satisfy the Burglary statute. See, *State v. Austin*, Montgomery App. No. 20445, 2005 Ohio 1035, P 17, citing *State v. Gregg* (Oct. 26, 1992), Champaign App. No. 91-CA-15, 1992 Ohio App. LEXIS 5481.

[*P30]  We next address the claim that the State failed to establish that someone was present, or likely to be present, in the apartment. Bell bases this claim upon the fact that Harvey was in prison on the date in question. However, the evidence establishes that Harvey's sister and brother and their families were watching over the apartment, and that they were actually in the apartment on a regular basis. Thus, we conclude that the State presented evidence sufficient to establish this element of the offense.

[*P31]  Next, Bell contends that the State failed to prove that he shot Bailey. Specifically, he argues that the State failed to connect him to the gun used in the shooting. He notes that the gun was found in a trash can in Trotwood, and that he did not have time between the shooting and his arrest to get to Trotwood and back to Northcutt Place. He further notes that his fingerprints were not found on the gun.

[*P32]  Bell's argument ignores the fact that the record contains the testimony of Lamicah Helton, which, if believed by the jury, supports a finding that Bell shot Bailey. Helton specifically testified that she observed Bell shoot Bailey. Another witness, Dejuan Cantrell, testified that he saw a black man dressed in black shoot Bell and then run into Helton's apartment. This testimony corroborates other eyewitness testimony indicating that Bell was dressed in dark clothing and that he went into Helton's apartment immediately following the shooting. Furthermore, Diamond Washington's testimony corroborates Helton's identification of Bell as the shooter. Therefore, regardless of how the gun was transported to Trotwood or whether Bell's prints were on the gun, there is competent evidence establishing him as the person who shot Bailey. [fn] 2

FOOTNOTES

2 As the State points out, Bell had ample time to dispose of the gun. After the shooting, he ran through Helton's apartment, and was not apprehended until approximately fifteen minutes later at a nearby apartment.

[*P33]  Bell complains that there is some discrepancy in the testimony of some of the witnesses. However, after reviewing over twelve hundred pages of transcript, we conclude that any claimed discrepancies are minor, and are more a case of different people observing the unfolding events from different locations.

[*P34]  In sum, we conclude that the State established that Bell shot Bailey, who died as a consequence of his injury. The State also established that Bell had the gun in his possession, even though he had a previous felony conviction. Finally, the State established both counts of Burglary, by showing that Bell used force to trespass and by showing that persons were likely to be in the apartment. We conclude that the jury did not lose its way in returning verdicts of guilty on this evidence. Therefore, we find that the convictions are not against the manifest weight of the evidence.

*State v. Bell, supra*, ¶¶ 27-34.

The issue Bell raised in the Court of Appeals is different from the issue he pleads here.  In

*State v. Thompkins,* 78 Ohio St. 3d 380, 678 N.E. 2d 541 (1997)*,* the Ohio Supreme Court reaffirmed the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the manifest weight of the evidence.   It held:

> In essence, sufficiency is a test of adequacy.  Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.   *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102, 387 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.  Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149.  Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.   Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.)
>
> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661.  See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The   court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387.  In *State v. Martin*, 20 Ohio App. 3d 172, 485 N.E. 2d 717 (Hamilton Cty.

-10-

1983)(cited approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest weight of the evidence claim:

> In considering the claim that the conviction was against the manifest weight of the evidence, the test is much broader.  The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

485 N.E. 2d at 718, ¶3 of the syllabus.

However, a state court finding that the verdict is not against the manifest weight of the evidence may implicitly also hold that there is sufficient evidence. *Nash v. Eberlin,* 258 Fed. Appx. 761; 2007 U.S. App. LEXIS 29645; (6th Cir. Dec. 14, 2007).  That is, if the weight of the evidence supports conviction, there must necessarily be sufficient evidence to support a conviction under the *Jackson v. Virginia* standard.

In this case that implicit holding is not an objectively unreasonable application of *Jackson*. The evidence recited by the Court of Appeals shows that there was evidence on each critical element (at least those elements that Mr. Bell challenged) such that a reasonable juror could have found for the State on that issue.

Therefore the second ground for relief should be dismissed with prejudice.

### Ground Three

In his third ground for relief, Mr. Bell again asserts ineffective assistance of appellate counsel, but without specifying any different assignments of error which he believes should have

been raised. All of the claims of ineffective assistance of appellate counsel preserved for federal habeas by inclusion in Mr. Bell's Application for Reopening have been dealt with above under the first ground for relief. Ground Three should be dismissed on the same basis as Ground One.

### Ground Four

In his fourth ground for relief, Petitioner asserts his conviction violates the Double Jeopardy Clause because he was convicted twice for the same offense.

The Double Jeopardy Clause of the United States Constitution affords a defendant three basic protection: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165(1977), quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

The Double Jeopardy Clause of the Fifth Amendment was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784 (1969).

The test for whether two offenses constitute the same offense is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688 (1993); *Blockburger v. United States*, 284 U.S. 299 (1932). Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985).

Bell raised the underlying question of whether Ohio law permits punishment for both of his burglary convictions in his third assignment of error on direct appeal. The Court of Appeals decided that assignment of error as follows:

> [*P37]  "THE TRIAL COURT ERRED IN NOT MERGING THE TWO BURGLARY CHARGES."
>
> [*P38]  Bell argues that the two burglary charges are allied offenses of similar import and should have been merged pursuant to 2941.25.
>
> [*P39]  R.C. 2941.25 provides:
>
> [*P40]  "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> [*P41]  "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import pursuant to R.C. 2941.25(B), or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
>
> [*P42]  A two-prong test is utilized to determine whether two or more offenses constitute allied offenses of similar import pursuant to R.C. 2941.25(A). First, the statutory elements of the crimes are compared in the abstract, without reference to the facts of the case or to the defendant's conduct constituting the offense. If the offenses are found to be so similar that the commission of one offense will necessarily result in the commission of the other, then the offenses are allied offenses of similar import. *State v. Cabrales*, 118 Ohio St.3d 54, 2008 Ohio 1625, 886 N.E.2d 181. Second, and relevant to this appeal, the defendant's particular conduct is reviewed to determine whether the defendant can be convicted of both crimes. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. *Id.*
>
> [*P43]  As noted above, Bell was convicted of two counts of Burglary: one count in violation of R.C. 2911.12(A)(3) -- trespass with purpose to commit a theft offense; and one count in violation of

> R.C. 2911.12(A)(4) -- trespass when a person other than the defendant or accomplice is likely to be present. A review of the record reveals that Bell was initially discovered around 2:00 p.m., coming out of the door of Harvey's apartment at 5155 Embassy carrying a DVD player that was identified as belonging to Harvey. Upon being confronted, Bell relinquished the DVD player. He then went to the apartment of Lamicah Helton and Lamond Chambers, located at 5151 Embassy. Bell left the scene when the police responded to the call that Harvey's apartment had been burglarized.
>
> [*P44] Two hours later, Bell was seen walking around outside the apartment complex. The evidence shows that Bell told several people that he believed he had left the keys to the truck he was driving in Harvey's apartment. When no one retrieved the keys for him, Bell attempted to enter the apartment through the kitchen window. He was then apprehended by Diamond and Bailey.
>
> [*P45] There is evidence in the record to support a finding that Bell burglarized the Harvey apartment via two separate entryways, at two separate times, and with two separate purposes. Therefore, we conclude that the trial court did not err by declining to merge the two Burglary counts. Accordingly, the Third Assignment of Error is overruled.

*State v. Bell, supra*, ¶¶ 37-45. Thus the Ohio court of appeals has answered definitively the question whether Ohio law permits separate punishment for these two burglary counts. Because it does, the State has not violated the Double Jeopardy Clause by punishing Bell separately for each offense. The fourth ground for relief should be dismissed with prejudice.

## Conclusion

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice on the merits. Because reasonable jurists would not disagree with this

conclusion, Petitioner should be denied a certificate of appealability and leave to appeal *in forma pauperis*.

June 22, 2011.

s/ **Michael R. Merz**<br>United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).